## PAYNE v. WITHERBEE, SHERMAN & CO.

(Supreme Court, Appellate Division, Third Department.   May 5, 1909.)

1. ELECTRICITY (§ 11\*) — SUPPLY OF ELECTRICAL POWER — CONTRACTS — CONSTRUCTION.

A contract bound a party to furnish the adverse party electrical power amounting to at least 350 horse power for at least 12 hours per day during every day of the year, and bound the adverse party to accept the minimum amount and to pay at the rate of $20 per horse power per year of 365 days of 12 hours each, and at the same rate for every hour over 12.  The adverse party received at least the minimum amount 12 hours or more in every day of the year, but the power had been intermittent.  As matter of fact, power was furnished for much more than 12 hours daily.  Held, that computing compensation at the rate of $20 per horse power per year of 340 days of 10 hours each, instead fo 365 days of 12 hours each, was erroneous, resulting in overpayment.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 11.\*]

2. PAYMENT (§ 85\*)—RECOVERY—MISTAKE OF FACT.

A buyer of electrical power agreed to pay a specified sum therefor.  His agent erroneously computed the compensation resulting in overcharges, which were paid.  The agent was authorized to measure the power and compute the price thereof, but only according to the contract price.  The buyer did not assent to or ratify the unauthorized act of the agent, but repudiated the same on ascertaining the facts.  Held, that the buyer was entitled to recover the overpayments as money paid under a mistake of fact.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 273; Dec. Dig. § 85.\*]

3. PAYMENT (§ 85\*)—RECOVERY—MISTAKE OF FACT.

Money paid under a mistake of fact may be recovered however negligent the party paying it may have been, unless the payment has caused such a change in the position of the other party that it will be unjust to require him to refund.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 281; Dec. Dig. § 85.\*]

4. PAYMENT (§ 89\*)—MISTAKE—RECOVERY—BURDEN OF PROOF.

The burden of proving that it would be unjust to require repayment of money paid under a mistake of fact rests on the party resisting repayment.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 295; Dec. Dig. § 89.\*]

Appeal from Trial Term, Essex County.

Action by Daniel F. Payne against Witherbee, Sherman & Co. From a judgment dismissing the complaint and awarding damages to defendant, together with costs on its counterclaim, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Smith & Wicks (Francis A. Smith, of counsel), for appellant.
Stokes & Owen (Edward T. Stokes, of counsel), for respondent.

COCHRANE, J.  Plaintiff seeks to recover an alleged balance of
$1,461.84 for electrical power furnished by him to the defendant dur-
ing the first five months of the year 1907 under a written contract en-
tered into March 22, 1905, between him as the party of the first part
and the defendant as party of the second part.  The defendant con-
tends, and the judgment determines, that the defendant has fully paid
for the power so furnished, and that, by mistake of fact, the defend-
ant has overpaid the plaintiff for power furnished under said con-
tract during the year 1906 to the extent of $3,646.23, besides interest,
which amount is awarded by the judgment to the defendant under its
counterclaim interposed herein against the plaintiff.  No question
exists as to the amount of power furnished at any time under the con-
tract.  The controversy arises concerning the price to be paid for such
power.

The contract provides that the minimum amount of power shall be
350 horse power and the maximum amount 750 horse power; that
delivery of said power shall begin January 1, 1906, and continue for
a period of 10 years.  The other portions of the contract relevant to
the purpose of this action are as follows:

"Such power to be furnished and delivered at least twelve hours per day
and for twenty-four hours per day if required by party of the second part dur-
ing each and every of the three hundred and sixty-five days in the year, ex-
cept that during at least one day in each week party of the first part shall be
required to furnish such power only for said minimum time of twelve hours.
The said day in each week during which only said minimum time shall be re-
quired, to be mutually agreed upon between the parties, and shall be during
each and every Sunday during the period of this contract if the necessities
of the party of the second part will permit thereof, and party of the second
part covenants and agrees to and with the party of the first part as follows:

"First. To accept and receive said amount of minimum power during at
least twelve hours per day for each and every day during the period of this
agreement.

"Second. To pay the party of the first part the sum of twenty dollars per
horse power per year of three hundred and sixty-five days of twelve hours each,
and at the same rate for each and every hour per day in excess of said twelve
hours.  *  *  *  It is further understood and agreed that if the party of the
second part shall not require said power during each and every of the twenty-
four hours per day, the party of the first part will furnish said power during
the twelve hours of each day which shall be designated by the party of the
second part."

Prior to 1906 the plaintiff had furnished power to the defendant
under another and similar contract so far as this question is concern-
ed.  During all that time, and down to January 1, 1907, the power was
measured by defendant's electrician Lamborn, and the price to be paid
was computed by him in conjunction with the plaintiff.  Such com-
putations were made at the rate of $20 per horse power for 340 days
of 10 hours each, instead of 365 days of 12 hours each, as provided
by the contract.  Bills were made out monthly showing the total
amount of power furnished and the aggregate price therefor, but
not showing the rate or method of computation, which bills were paid
by the defendant in the usual course of its business.  About January

1, 1907, Lamborn left defendant's employ, and the person who succeeded him at once discovered that the prior computations had not been made in accordance with the contract, and reported his discovery to defendant. The latter through its general manager notified the plaintiff in writing of the fact and· amount of the alleged overpayments, and that the plaintiff must return the same. Defendant thereafter made payments according to its theory of computation.

The theory of the plaintiff is best stated by quoting from his brief as follows:

"Lamborn, the defendant's accredited agent, and the plaintiff, when the first contract (Exhibit No. 2) took effect, settled the method of computing the plaintiff's compensation, and agreed that as the contract provided that during one-half day of 12 hours in each week the plaintiff should not be required to furnish power—that is to say, 26 days of 12 hours each out of the year—340 days should be counted for a year. * * * The plaintiff's contention is that under both contracts, by their plain and unmistakable terms, the plaintiff was entitled to receive payment for 12 hours if the defendant took the power for only 10 hours. It is established that the defendant took power only 10 hours out of 12, 20 hours out of 24, except that the plaintiff delivered an average of only 75 to 100 horse power during 4 hours out of 24, or 2 hours out of 12, when the defendant shut off all but the limited power furnished."

It seems that during certain portions of the day when defendant's employés were at their meals the minimum of 350 horse power specified in the contract was not being received by defendant, and plaintiff's contention seems to be that because defendant was not receiving at least such minimum power during 12 consecutive hours, but as he says only 10 out of 12 or 20 out of 24 hours, and that because during one day in a week he was not obliged to furnish power for more than 12 hours, therefore the rate of compensation should be computed based on 10 hours a day and 340 days a year, and, as heretofore stated, it is at that rate that payments were computed and made during the year 1906, and for which plaintiff claims payment during the first 5 months of the year 1907. Defendant has received at least the minimum of 350 horse power 12 hours or more in every day, but the contention of plaintiff is that such power has been intermittent and not continuous.

The contract as to the rate of payment is plain and unambiguous. Plaintiff is to be paid "the sum of $20 per horse power per year of 365 days of 12 hours each, and at the same rate for each and every hour per day in excess of said 12 hours." The method pursued has clearly ignored this express provision in the contract, and substituted therefor an arbitrary and artificial method, which not only lacks support in the contract, but is an entire departure from its express provisions. Plaintiff in his complaint stands squarely on the contract, and expressly alleges that, "pursuant to the terms and provisions of said contract," he delivered the power. There being no question that defendant has not taken all the power it agreed to take nor as to the amount of power actually delivered, it follows that the only question before us is the construction of this contract as to the price to be paid for· the power so delivered and the plain provisions of the contract as to the rate of payment should prevail. Plaintiff, therefore, has been

fully paid for the power furnished for the five months of 1907, and has been overpaid for the power furnished in 1906.

There is no reason in law or justice why defendant should not recover these overpayments. The court has found that they were made by mistake, and the evidence clearly sustains the finding. The mistake consisted in ignorance of the fact that the computations were not being made according to the rule declared in the contract. It is true that Lamborn made the computations, and that the bills paid by defendant contained data from which one familiar with the method of determining the price of the power could by a somewhat involved process of mathematical computation ascertain that a mistake was being made. But it was a matter requiring technical knowledge, and the computation was somewhat complicated, and an ordinary observer would not be informed from a perusal of these bills and memoranda that an improper price was being charged. It is also true that Lamborn was authorized to measure the power and compute the price thereof, but he was not authorized to deviate from the written contract as to the basis of such computation. Defendant did not assent to or ratify this unauthorized act of its electrician, but, on the contrary, repudiated the same as soon as it ascertained the fact and called on plaintiff for repayment. If defendant through oversight or inadvertence has made overpayments according to an unauthorized plan pursued by Lamborn, that fact does not justify plaintiff in retaining what he has improperly received in the absence of proof that he has been prejudiced thereby. Mayer v. Mayor, etc., of New York, 63 N. Y. 455; Sharkey v. Mansfield, 90 N. Y. 227, 43 Am. Rep. 161; Hathaway v. County of Delaware, 185 N. Y. 368, 78 N. E. 153, 13 L. R. A. (N. S.) 273, 113 Am. St. Rep. 909; Kingston Bank v. Eltinge, 40 N. Y. 391, 100 Am. Dec. 516; Ransom v. Masten, 4 N. Y. Supp. 781, 52 Hun, 610. The well-settled rule is stated in Hathaway v. County of Delaware, supra:

"Money paid under a mistake of fact may be recovered back, however negligent the party paying may have been in making the mistake, unless the payment has caused such a change in the position of the other party that it would be unjust to require him to refund (Nat. Bank of Commerce v. Nat. Mechanics' Banking Ass'n, 55 N. Y. 211, 14 Am. Rep. 232), and, if circumstances exist which make such recovery inequitable, the burden of proving that fact rests upon the party resisting the payment."

The judgment should be affirmed, with costs. All concur.